IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SALLY E. HOLCOMB, ) | Civil Action No. 3:08-2881-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On June 6, 2005, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held January 14, 2008, at which Plaintiff appeared and testified, the ALJ denied Plaintiff's claim in a decision dated March 25, 2008. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-three years old at the time she alleges she became disabled and forty-six years old at the time of the ALJ's decision. She has a sixth grade education and past relevant work as a janitor, pricer, hand-packer, screen printing operator, and clothes presser. Plaintiff alleges disability since June 9, 2005 because she had "[b]ack surgery scheduled" for June 14, 2005, and she did not plan to return to work for several months after her surgery. Tr. 74-75.

The ALJ found (Tr. 17-21):

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since June 9, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: depression and degenerative disease of the lumbar spine (20 CFR § 404.l520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant requires unskilled work with a sit/stand option.

6. The claimant is unable to perform any of her past relevant work (20 CFR 404.l565).

7. The claimant was born on February 25, 1962, and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.l563).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability, as defined in the Social Security Act, from June 9, 2005, through the date of this decision. (20 CFR 404.l520(g)).

On June 27, 2008, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff then filed this action in the United States District Court on August 18, 2008.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**

Plaintiff has a history of chronic low back pain since 1997. See Tr. 135, 164-167. An MRI in March 2005 revealed mild L4-5 and moderate L5-S1 disc degeneration, moderate disc bulges at L4-5 and L5-S1, small posterior annular tears at L4-5, minimal to mild foraminal encroachment, and no evidence of disc herniation. Tr. 168-169. The radiologist opined that there was "no appreciable disease progression compared to [a prior MRI from April 2002]." Tr. 169.

Plaintiff was treated by Dr. Susan Bland, a family practitioner, from July 2003 to April 2006. Tr. 162-175. On March, 17, 2004, Dr. Bland prescribed Anaprox (an anti-inflammatory medication) for Plaintiff's back pain. Tr. 166. Anaprox and Darvocet (an analgesic for mild to moderate pain) were prescribed for her back pain on March 21, 2005. Plaintiff reported on May 18, 2005 that

Darvocet made her sleepy. Flexeril (a muscle relaxant) was prescribed and Anaprox was continued. Dr. Bland noted that an MRI of Plaintiff's back in March 2005 showed "some mild degrees of L5 foraminal stenosis." Tr. 164.

Plaintiff was examined by Dr. Gerald Rollins, an orthopaedist, on May 26, 2005. Plaintiff complained that she had suffered from back pain for ten years. She rated her back pain, as well as pain that radiated into her buttocks, thighs, and sometimes her calves, as ten on a scale of one to ten (with ten as the worst pain). Examination revealed that Plaintiff had a regular gait with no limp and no muscle spasms. Her back showed some flattening of the lumbar curve and she had restricted range of motion secondary to pain. Dr. Rollins noted that Plaintiff had good range of motion in her hips and lower extremities, she was grossly intact neurologically, and she had good muscle strength. X-rays revealed severe degenerative disc disease at L5-S1 with no neurological compression and no disc herniation. Dr. Rollins opined that Plaintiff would benefit from lumbar fusion surgery, which was scheduled for June 14, 2005. Tr. 135-138.

Dr. Bland wrote that Plaintiff's lab results were "ok" and Plaintiff was "ok" for surgery on June 3, 2005. On June 21, 2005, Dr. Bland noted that Dr. Rollins wanted $2,700 prior to surgery, but Plaintiff could not afford to pay this fee, and the surgery was cancelled. Tr. 163.

On July 11, 2005, State agency physician Dr. Hugh A. Clarke reviewed Plaintiff's medical records and opined that she had the RFC to lift fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit about six hours each in an eight-hour workday; occasionally climb and stoop; and frequently balance, kneel, crouch, and crawl. Tr. 141-147. On September 26, 2005, State agency physician Dr. Dale A. Van Slooten reviewed Plaintiff's medical records and opined that Plaintiff had the same restrictions set forth by Dr. Clarke. Tr. 153-158.

Dr. Cavert McCorkle, a neurosurgeon, evaluated Plaintiff's back on September 26, 2005. Plaintiff reported worsening pain. She said she quit her job the year before because it required a lot of bending, stooping, mopping, and sweeping. She reported she took Naproxyn (anti-inflammatory drug) and Flexeril (muscle relaxant), and experienced pain that was a ten on a scale of one to ten. Dr. McCorkle noted that the March 2005 MRI showed no ruptured discs and "no appreciable progression" compared with the 2002 MRI. His examination revealed that Plaintiff moved about fairly well; she had stiffness with forward and backward bending; and she had symmetrical motor strength, sensation, and reflexes. Dr. McCorkle characterized Plaintiff's disc degeneration as stable and was not convinced that surgery would help her condition. He recommended physical therapy and possible pain management evaluation. Tr. 149-150.

On April 24, 2006, Plaintiff reported to Dr. Bland that she continued to have low back pain. Plaintiff was prescribed Zestril to regulate blood pressure and Protonix to treat reflux. Tr. 162.

On December 3, 2007, Plaintiff underwent a psychological evaluation with Dr. Luther Diehl, a psychologist, at the request of her attorney. Tr. 177-186. Plaintiff said she had back pain and could not bend, lift, stand, or walk for significant periods of time. Tr. 178. She denied any prior psychiatric evaluation or treatment except for taking "nerve pills" in the first grade. Tr. 179. Plaintiff reported that she had not done well in school, but denied being in special education classes. Plaintiff stated she stopped working as a janitor because of increased back pain. Plaintiff reported daily activities of getting her children ready for school, doing a little bit of housework at a time, doing laundry, driving "some," watching a small amount of television, going to the grocery store, visiting with family members, and attending church. Tr. 182.

Dr. Diehl's examination revealed that Plaintiff was adequately oriented and she had logical and concrete thought processes, but she had difficulty attending to complicated instructions and poor attention to detail. He noted, however, that "her effort would have to be considered questionable during a good bit of the testing." Tr. 181. Dr. Diehl noted that Plaintiff had an exaggerated sense of inadequacy, immature personality development, and test scores indicating depression and anxiety. Academic testing showed reading and math scores at the elementary school level, but Dr. Diehl noted that Plaintiff's level of effort on the test was "less than optimal." Tr. 184. Wechsler series intelligence testing revealed scores of 66 verbal, performance 64, and full scale 62. Dr. Diehl noted, however, that Plaintiff "seemed less than adequately invested in her test performance, her IQ results were probably not a valid representation of her functioning," and she was probably "within the borderline range of abilities" rather than mentally retarded. Tr. 183. He noted that on a memory test her:

> style of completing the task as well as her low score would be considered extremely unusual, even for individuals in the borderline or mildly retarded range of abilities. Thus, her response on this task does have a tendency to suggest intentional malingering in abilities testing, which was consistent with clinical observation.

Tr. 184. Dr. Diehl further observed that the:

> results of the intellectual assessment were not entirely valid because of considerations regarding [Plaintiff's] level of effort. It does seem likely that she had functioned within the borderline range of abilities, but her history as well as observation would indicate that she does not appear mentally retarded.

Tr. 185.

Dr. Diehl concluded that Plaintiff's rehabilitation potential seemed extremely limited and that her educational level would be "quite limiting in terms of the types of jobs she could perform." His assessment was that Plaintiff had a depressive disorder, a pain disorder, reading and writing

6

disorders, borderline intellectual functioning (tentative diagnosis), and dependent personality traits. Tr. 185-186. Dr. Diehl further opined that Plaintiff's disorders resulted in "marked" restriction of activities of daily living and "marked" difficulties in maintaining concentration, persistence, and pace. Tr. 186.

## **HEARING TESTIMONY**

At the hearing, Plaintiff testified that she could read and write "very little." She, however, stated that she could read "some" of the newspaper and had taken and passed a driver's license test on a computer on her first try. Tr. 196, 198.

Plaintiff stated that she did very little driving, her husband (who was on disability) did all the grocery shopping, and she could not clean her house. Tr. 197, 209, 212. She testified that she could only walk a few steps; could not bend, stoop, or lift more than five pounds; had to lie down five to six times a day; and had to stop and rest for thirty minutes after doing five minutes of housework. Plaintiff reported difficulty getting dressed and fixing her hair. Tr. 213. She claimed that "the least little movement in [her] back made [her] back hurt real bad" and during the day she would "try to sit a little bit and stand up a little bit." Tr. 213. Plaintiff rated her daily pain as ten (on a scale of one to ten), and said medications did not help. Tr. 214, 218.

Plaintiff testified that she went to church for two hours every Sunday and one hour every Wednesday, but had to move around a lot during the sermon. Tr. 217, 219. She denied needing any type of assistive device to walk. Tr. 218-219. Plaintiff also reported that she was depressed and had memory and concentration problems. Tr. 214-215.

## **DISCUSSION**

7

Plaintiff alleges that the ALJ: (1) failed to properly determine her residual functional capacity ("RFC"); (2) failed to properly evaluate her pain; and (3) failed to consider whether she met the listings of impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.05. The Commissioner contends that substantial evidence[1] supports the decision that Plaintiff was not disabled within the meaning of the Social Security Act.

**A.    RFC**

Plaintiff argues that the ALJ's RFC assessment of her is not supported by substantial evidence. Specifically, she claims that the ALJ failed to address the requirements of sedentary work, failed to include specific references to the medical evidence when making the assessment, and failed to determine and state whether Plaintiff can perform these demands on a regular and continuing basis. The Commissioner contends that the RFC determined by the ALJ is supported by substantial evidence.

Substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform unskilled sedentary work with a sit/stand option. None of Plaintiff's treating physicians opined that she was physically incapable of working or placed any restrictions on her ability to work. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585,

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

589 (4th Cir. 1996)(treating physician's opinion entitled to great weight). Plaintiff testified that her biggest problem involved her back. The March 2005 MRI revealed that her back problems had not appreciably worsened since April 2002 (the time of her previous MRI). There is no indication that her condition significantly worsened at the time of her alleged onset of disability (June 2005) and she worked until that time despite this impairment. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

The ALJ's physical RFC findings are also supported by the opinions of the State agency physicians who indicated that Plaintiff was able to perform medium work (a higher level than found by the ALJ). See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Contrary to Plaintiff's argument, the ALJ specifically noted Plaintiff's medical records in determining her RFC. See Tr. 19. The ALJ found that she had the RFC to perform sedentary work

as defined in 20 CFR 404.1567(a),[2] except that she required unskilled work with a sit/stand option. Tr. 18.

Plaintiff argues that the ALJ erred by not considering her ability to work on a regular and continuing basis. Plaintiff's Brief at 5. The Commissioner contends that the ALJ did not err because he found that Plaintiff could perform sedentary work, which implicitly contains a finding that she is able to work on a regular and continuing basis.

RFC is, by definition, an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means eight hours a day, five days a week, or an equivalent work schedule. See SSR 96-8p. RFC determinations may contain implicit findings, including a finding of the ability to work on a regular and continuing basis. See, e.g., Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight hour day."); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003)(holding that the ALJ implicitly found claimant was not limited in the areas of sitting, standing and walking, when the ALJ specifically addressed in the RFC the functions in which he found a limitation).

**B.    Pain**

---

[2]This regulation provides:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. 404.1567(a).

Plaintiff alleges that the ALJ erred by filing to consider the vocational consequences of her pain as required by SSR 96-7p. The Commissioner contends that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints and found that her "statements concerning the intensity, duration, and limiting effects of [her symptoms were] not entirely credible." See Tr. 19.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount the credibility of Plaintiff's complaints of pain is supported by substantial evidence. The ALJ accepted that Plaintiff had impairments capable of causing pain and discussed the two-part test for evaluating pain. Tr. 18-19. As discussed above, the findings of Plaintiff's treating physicians, as well as the objective medical tests, do not indicate the degree of symptoms alleged by Plaintiff. As noted by the ALJ (Tr. 19), Plaintiff's medical records revealed a normal gait, no need for an assistive device, good strength, normal coordination, no neurological

deficits, no muscle spasms, good range of motion of her hips and lower extremities; and no evidence of neurological compromise. See Tr. 135-136, 149.

The ALJ also noted that Plaintiff did not seek any on-going treatment for any physical or mental condition. There is no indication that Plaintiff took any medications for her mental conditions or sought counseling. After the time Plaintiff alleges she became disabled (June 2005), she sought only sporadic treatment (consultation with Dr. McCorkle in September 2005, an appointment with Dr. Bland in April 2006, and nothing other than the renewal of prescriptions without any office visits thereafter). A claimant's lack of treatment may be considered in evaluating whether an impairment is disabling. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(finding that inconsistency between the level of claimant's treatment and her claims of disabling pain supported the conclusion that claimant was not credible).

The ALJ's decision to discount Plaintiff's pain is also supported by her lack of use of strong pain medications. As noted by the ALJ (Tr. 19), Plaintiff took only Naproxen for her pain (which she rated a ten on a scale of one to ten). See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"). Plaintiff argues that the ALJ should not have discounted her pain for not taking strong pain medications because Dr. Bland noted in May 2005 (Tr. 164) that Darvocet made Plaintiff sleepy and Lortab made her sick. There is, however, no indication that Plaintiff asked

for or that Dr. Bland tried other pain medications, sought pain medication from another physician, or tried other alternatives for her pain after that time.

**C.      Listings**

Plaintiff alleges that the ALJ erred in failing to consider whether she met the Listing at § 12.05C (mental retardation). She contends that she meets this Listing because she had IQ scores ranging from 61 to 66, testing revealed she read on a kindergarten level, her IQ is consistent with Plaintiff's testimony that she attended school only until the sixth grade and cannot read and write well, and she has more than one physical impairment imposing significant work-related limitations. The Commissioner contends that Plaintiff fails to show that she meets this Listing because she has not shown valid IQ scores in the required range and has not shown that she has disabling deficits in adaptive functioning present prior to age 22.

> The Listings at § 12.05C require that the plaintiff show evidence of:
>
> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless. Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985). Section 12.05 further provides:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Fourth Circuit has held that § 12.00 "expressly define[s] mental retardation as 'a lifelong condition.'" Branham v. Heckler, 775 F.2d at 1274.

Plaintiff did not allege mental retardation in her disability application, at the hearing, or in her brief to the Appeals Council. She, however, submitted records from Dr. Diehl which indicated that her IQ scores were in the Listing's required range.

Although the ALJ did not specifically address the Listing at § 12.05C, any failure to do so is harmless error, as Plaintiff fails to show that she met or equaled this Listing. Specifically, Plaintiff has not shown that she had "valid" IQ scores in the requisite range. The ALJ found that intellectual testing was "not considered valid due to the claimant's effort on testing, as well as her previous ability to hold employment." Tr. 18. Dr. Diehl noted in his report that Plaintiff's IQ scores were not entirely valid, she gave suboptimal effort throughout the evaluation, and she engaged in "intentional malingering" during testing of her abilities. Tr. 181, 183, 184, 185. He also tentatively diagnosed her borderline intellectual functioning (not mental retardation). See Tr.185. Plaintiff has not challenged the ALJ's determination that the testing was not considered valid or offered anything to show that the test results should be considered valid.

Plaintiff argues that the ALJ erred in relying on her work history to disprove disability. Although the Fourth Circuit has indicated the mere existence of a work history cannot be used to determine if an impairment is disabling when the impairment is already presumptively disabling under a listing, see Luckey v. U. S. Dep't of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989), that is not the case here. As noted above, Plaintiff has not shown valid IQ scores in the required range. Here, the ALJ found that the intellectual testing scores were not valid in part because of Plaintiff's past ability to hold employment.³ An ALJ "may decline to accept a claimant's performance [on an IQ test] where the claimant has demonstrated a work history inconsistent with

---

³The VE testified that some of Plaintiff's past work was semi-skilled. See Tr. 221-22.

those scores, or where the claimant's performance in IQ testing is depressed ..." Robertson v. Barnhart, 2006 WL 3526901, * 2 (W.D. Va. Dec. 1, 2006)(unpublished).

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence or was not correct under controlling law. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

_____
Joseph R. McCrorey
United States Magistrate Judge

November 6, 2009
Columbia, South Carolina